Michael S. Devereux  (SBN 225240)
9440 Santa Monica Blvd, Suite 301
Beverly Hills, California  90210
Telephone: (424) 600-8584

Attorneys for DEFENDANT, MELVIN HUGHES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO.: 2:25-cr-00641-MWF |
|---|---|
| Plaintiff, | **DEFENDANT MELVIN LOUIS HUGHES'S NOTICE OF MOTION AND MOTION TO REVOKE OR AMEND MAGISTRATE JUDGE'S DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145(b)** |
| v. | |
| MELVIN HUGHES, | |
| Defendant. | |

TO THE HONORABLE DISTRICT JUDGE, THE UNITED STATES ATTORNEY, AND ALL COUNSEL OF RECORD:

Defendant Melvin Louis Hughes, by and through his counsel, Michael Devereux, respectfully moves this Court to revoke or amend the magistrate judge's detention order under 18 U.S.C. § 3145(b). Section 3145(b) permits a defendant detained by a magistrate judge to seek review in the court having original jurisdiction over the offense, and that review must be determined promptly.

This motion asks the Court to look at the record as it stands now. The Bail Reform Act requires release on the least restrictive combination of conditions that will reasonably assure appearance and safety. Detention is the exception. It is not supposed to become the default response to a serious sounding case. *United States v. Salerno*, 481 U.S. 739, 755 (1987); 18 U.S.C. § 3142(c).

1

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and any further matter the Court may consider.

Dated: June 11, 2026                    Respectfully Submitted,


By: ___*Michael Devereux*___
                    Michael Devereux
                    Attorney for Defendant
                    Melvin Hughes

MICHAEL DEVEREUX, ESQ.

## TABLE OF CONTENTS

I. BACKGROUND...................................................................................................5

    A.    Mr. Hughes Longstanding Community Ties....................................................5

    B.    Any Assertion that Mr. Hughes is a Flight Risk is Without Merit ..............6

    C.    Mr. Huges Being a Danger to the Community is Dubious at Best When Compared to Co-conspirator .........................................................................6

II. Standard of review .............................................................................................7

III. Argument ..........................................................................................................8

    A. The Present Record Supports Release With Strict Conditions..........................8

    B. Mr. Hughes's Community Ties, Family Ties, and Surety Package Strongly Support Release ..........................................................................................8

    C. Alleged Loss is Not the Appropriate Measure for a Bond Amount .................10

    D. The Medication Argument Actually Points Toward Supervised Release........10

    E. The Passport Evidence Weakens The Flight Narrative In A Real Way ...........11

    F. The Record Concerning Susana Virrey Further Complicates The Government's Theory of Danger to the Community...................................12

    G. The Cryptocurrency Issue Can Be Handled Through Conditions....................13

    H. This case still requires an individualized detention analysis...........................14

IV. Proposed conditions of release ..........................................................................14

V. Conclusion ..........................................................................................................15

MICHAEL DEVEREUX, ESQ.

**TABLE OF AUTHORITIES**

**CASES**

*United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) ..............................7, 13

*United States v. Salerno*, 481 U.S. 739 (1987)...............................................1, 7, 11

*United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990) ..........................7, 10, 11

**STATUTES**

18 U.S.C. § 3142.....................................................................................................passim

18 U.S.C. § 3145.................................................................................................1, 7, 15

MICHAEL DEVEREUX, ESQ.

MICHAEL DEVEREUX, ESQ.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

Mr. Hughes was arraigned on August 22, 2025, and the original detention hearing took place on August 28, 2025. After that ruling, the defense filed additional motions addressing the passport issue, the proposed sureties, the available residence, financial restrictions, and medical information stemming from Mr. Hughes's recent hospitalization for high blood pressure. The second reconsideration motion filed on May 26, 2026, set out a comprehensive bail package and proposed specific conditions directed at every concern the Government had raised.

That filing offered concrete conditions, not general assurances. It proposed a secured bond, home detention, GPS monitoring, surrender of all passports and travel documents, no international travel, strict limits on financial activity, disclosure of cryptocurrency accounts, no contact conditions, and continuing medical monitoring.

### A. Mr. Hughes Longstanding Community Ties

Mr. Hughes also has longstanding ties to this District that are now better documented. The June 8, 2026, Pretrial Services report reflects that Mr. Hughes has been in the community since 2007, that his most recent residence was in Port Hueneme, and that he has longstanding California ties. The same report confirms that his daughter resides in this District with her husband and children, and that they

are prepared to receive him into their home if he is released. Those facts matter because they bear directly on stability, rootedness, and any realistic assessment of whether Mr. Hughes would abandon the community where his family life is centered.

### B. Any Assertion that Mr. Hughes is a Flight Risk is Without Merit

Any assertion that Mr. Hughes is a flight risk is without merit. The Government's earlier theory of clandestine foreign travel is substantially weakened by the passport evidence, along with Mr. Hughes's return to the United States before arrest. The government's argument is inconsistent with any genuine intent to abscond. With longstanding ties to this District, a fixed residence, and a secured family-backed surety package now before the Court, any remaining appearance concerns can be managed through stringent conditions of release.

### C. Government's Argument that Mr. Huges Is a Danger to the Community is Dubious at Best When Compared to Co-conspirator

The claim that Mr. Hughes poses a danger to the community is dubious at best. The pending charges are serious, but they are nonviolent financial offenses, and the Government's articulated concerns are the kind that can be managed through strict release conditions rather than incarceration.

MICHAEL DEVEREUX, ESQ.

MICHAEL DEVEREUX, ESQ.

The government's argument of Mr. Hughes is difficult to believe when compared to the government's treatment of co-conspirator Susana Virrey. In a related case, co-conspirator Susana Virrey was released on her own recognizance. Co-conspirator Virrey accepted a plea disposition for the same underlying conduct. Additionally, she admits in her plea agreement that even after the IRS warned her that her conduct was unlawful, she repeatedly participated in preparing and filing fraudulent returns. Many, if not all, of those returns were for exorbitant fees. Against that record, the government's argument that Mr. Hughes presents a danger that no condition or no combination of conditions could reasonably assure the safety of the community is difficult to reconcile with the co-conspirator's record before the Court.

## II. Standard of review

A defendant ordered detained by a magistrate judge may move the district court for revocation or amendment of that order. 18 U.S.C. § 3145(b). The district court then makes its own determination whether detention is warranted under § 3142.

Section 3142 does not ask whether the Court can eliminate all risk. It asks whether available conditions will reasonably assure the appearance and the safety of any other person and the community. 18 U.S.C. § 3142(c)(1)(B). The statute also forbids imposing a financial condition that results in detention. 18 U.S.C. § 3142(c)(2).

The Supreme Court has described pretrial detention as a carefully limited exception. *Salerno*, 481 U.S. at 755. The Ninth Circuit has made clear that the weight

MICHAEL DEVEREUX, ESQ.

of the evidence is the least important detention factor. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). The Ninth Circuit has also explained that the question is whether any combination of conditions will reasonably assure the defendant's presence, not whether the Court can guarantee perfect compliance. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

## III. Argument

### A. The Present Record Supports Release With Strict Conditions

The current record is substantially stronger than the record that existed at the start of the case. The defense has now identified sureties, collateral, a residence, a monitoring structure, passport surrender, travel restrictions, financial disclosure requirements, cryptocurrency restrictions, and medical compliance conditions. This is a serious release plan aimed at the precise concerns the Government has identified.

That matters because the statute favors calibration, not an all-or-nothing approach. The Court must decide whether a combination of conditions will reasonably assure appearance and safety. Here, the defense has proposed a broad set of restrictions that directly addresses travel, money, communication, and health. Continued detention is not justified simply because the Government would prefer more severe restraint. 18 U.S.C. § 3142(c)(1)(B).

### B. Mr. Hughes's Community Ties, Family Ties, and Surety Package Strongly Support Revoking Detention

The June 8, 2026, Pretrial Services report gives the Court a clearer record of Mr. Hughes's ties to this District. Pretrial reports that he has been in the community since 2007 and that his most recent residence was in Port Hueneme. Pretrial also

8

MICHAEL DEVEREUX, ESQ.

confirmed through his daughter and son-in-law that he has immediate family in this District and, if released, would reside with them at their Winchester residence. These are the kinds of real, verifiable ties that matter in a detention analysis because they show rootedness, accountability, and a stable place for supervision.

The family support here is substantial. Pretrial spoke directly with Mr. Hughes's daughter, Tamika Boswell, and her husband, Justin Boswell. They verified key background information, agreed to have him live with them, and advised that they are willing to pledge $60,000 in equity from their residence to secure his appearance. Pretrial further recorded that Mrs. Boswell is retired from the military (US Navy), while Mr. Boswell is also retired from the military (US Marines). That is not a symbolic package. It is a concrete surety proposal backed by a stable household, identifiable collateral, and family members who understand that their own assets are at risk if Mr. Hughes violates release conditions.

The property itself gives the Court additional assurance. According to the June 8th PSA report, the Boswells purchased the residence in August 2021, it was recently appraised for far more value. *See previous exhibits filed under seal.* The Court is therefore not being asked to rely on vague promises or aspirational support. It is being presented with a real address, real sureties, real collateral, and a real supervisory structure.

These ties and this package make the Government's flight narrative less persuasive. A person with a longstanding residence in the community, immediate family in the District, grandchildren in the proposed residence, and a family backed bond package is not lightly presumed to abandon everything and disappear. The Court should evaluate risk on these concrete facts, not on generalized inferences drawn from foreign travel alone.

**C. Alleged Loss is Not the Appropriate Measure for a Bond Amount**

The Government argued that $60,000 was too low when compared with an alleged tax loss of approximately $13 million. But that is not the legal test. The Bail Reform Act does not create a sliding scale under which alleged loss dictates bail by rough proportion. The question is whether the Court can fashion conditions, financial and nonfinancial, that will reasonably assure appearance and safety. 18 U.S.C. § 3142(c).

Section 3142(c)(2) also says the Court may not impose a financial condition that results in pretrial detention. So if the Government's real point is that the bond must be set so high that release becomes impossible, the argument becomes a request for detention by another name. The statute does not allow that. 18 U.S.C. § 3142(c)(2).

The defense is not asking this Court to freeze the number at $60,000. The Court can set a more substantial secured bond if it believes one is appropriate. But that amount must be considered together with the rest of the package. Here there are sureties, collateral, GPS monitoring, home detention, passport surrender, restrictions on financial movement, and reporting requirements. When those conditions are viewed together, the Government has not carried its burden of showing that no combination will reasonably assure appearance. *Townsend*, 897 F.2d at 994.

**D. The Medication Argument Actually Points Toward Supervised Release**

The Government argued that Mr. Hughes's high blood pressure is not a meaningful release factor because, if he took conventional medication, the condition

MICHAEL DEVEREUX, ESQ.

would be controlled. That argument does not support detention. It supports conditions.

If a medical condition can be controlled through medication, follow up care, diet, monitoring, and regular reporting, then the condition is manageable. And manageable conditions are exactly the sort of issues courts address through release terms. Section 3142 directs courts to consider a defendant's physical condition as part of the history and characteristics analysis. It does not say that a controllable medical issue becomes a reason to keep someone in custody. 18 U.S.C. § 3142(g)(3)(A).

The Government's position is also too broad. It would mean that any chronic but controllable condition could be turned into a reason for detention because the Government can always say that, if the person complied perfectly, there would be no issue. That is not the standard. The Act requires conditions that reasonably assure appearance and safety. It does not require certainty. *Salerno*, 481 U.S. at 755; *Townsend*, 897 F.2d at 994.

Mr. Hughes is prepared to accept direct medical compliance conditions. Those conditions can include continued treatment, compliance with prescribed medication, notice to Pretrial Services regarding appointments that require travel, and prompt reporting of any hospitalization or significant change in condition. The Government's own premise, that treatment can control the condition, shows why structured release makes sense here.

**E. The Passport Evidence Weakens The Flight Narrative In A Real Way**

One of the Government's most significant themes has been that Mr. Hughes supposedly traveled to Ghana without using his United States passport. But the

MICHAEL DEVEREUX, ESQ.

11

defense later obtained the United States passport, and it bears a Ghana entry stamp dated April 1, 2025.

That does not answer every question in the case. It does answer an important one. It substantially undercuts the suggestion that Mr. Hughes entered Ghana through covert means using a concealed passport. The earlier defense filing also noted that the Government's additional inquiry into possible Ghanaian passport records remained unresolved at the time. So the detention theory rested in part on an unresolved possibility, while the documentary record moved in the other direction.

There is more. As the defense has already proffered, Mr. Hughes knew the investigation was pending, returned to the United States weeks before his arrest, and remained here. That conduct is difficult to square with a fixed intent to flee. A person determined to disappear does not ordinarily come back into the jurisdiction shortly before arrest. The chronology is not conclusive, but it is important, and it favors release.

**F. The Record Concerning Susana Virrey Further Complicates The Government's Theory of Danger to the Community**

The Court should be cautious about drawing final merits conclusions before trial, and the defense is not asking the Court to try the case in a detention appeal. Still, the record from the related Virrey matter is relevant in at least one respect. It shows a more complicated picture than a simple portrayal of Mr. Hughes as the sole knowing architect of everything that occurred.

The Government's own related case filing states that Susana Lorena Virrey was charged separately in Case No. 2:25-cr-00664-RGK, that the Government regarded the two matters as related, and that the information in her case alleged she conspired with Co-Conspirator 1 and assisted in preparing and filing false Forms

1041 for clients that Co-Conspirator 1 recruited. The Government further represented that Ms. Virrey signed a plea agreement and that it anticipated calling her as a witness at Mr. Hughes's trial. The arraignment minutes in her case also reflect that she was released on personal recognizance with conditions rather than detained.

Ms. Virrey's plea agreement and the information also show that she worked as a professional tax return preparer in California, did business through tax preparation entities, and generally received fees for preparing the false Forms 1041 and associated documents. The plea agreement further states that when she initially prepared and filed those returns, Co-Conspirator 1 assured her and tried to convince her that the returns were lawful, although the agreement later contradicts that claim by alleging that she later continued after receiving contrary IRS notices.

Without giving away trial strategy, the defense respectfully submits that these materials support a more nuanced inference. Mr. Hughes appears to have gone to a Los Angeles tax preparer and been drawn into a broader enterprise run through a professional preparer who was charging substantial fees and recruiting others into the process. At a minimum, the related case materials support the argument that the story is more layered than the Government's detention presentation suggests, and that detention should not rest on an oversimplified moral narrative before the evidence is tested at trial.

### G. The Cryptocurrency Issue Can Be Handled Through Conditions

The Government has also relied on the claim that Mr. Hughes had about sixteen bitcoin and could use cryptocurrency to flee. But the defense pointed out that the Government's own prior submission recorded Mr. Hughes's statement to Pretrial

13

Services that the sixteen bitcoin had been taken by the IRS. That makes the issue far less clean than the Government suggests.

Even if the Court remains concerned, that concern can be managed. The proposed conditions require disclosure of wallets and exchanges, prohibit transfers, limit account activity, and allow financial monitoring. That is how the statute is supposed to work. If a specific concern can be addressed by a specific condition, detention should not be the automatic answer. 18 U.S.C. § 3142(c)(1)(B).

### H. This case still requires an individualized detention analysis

The charges here are serious. No one is minimizing that. But they are nonviolent financial charges, and seriousness alone cannot do all the work. The Ninth Circuit has warned that the weight of the evidence is the least important factor. *Motamedi*, 767 F.2d at 1408. The detention decision must remain focused, individualized, and tied to the statutory question.

That question is narrow. Can this defendant, on this record, be released on strict conditions that reasonably assure appearance and safety? With the current package, the answer is yes. The statute does not require the Court to pretend risk disappears. It requires the Court to decide whether risk can be reasonably managed. Here it can. 18 U.S.C. § 3142(c); *Salerno*, 481 U.S. at 755; *Townsend*, 897 F.2d at 994.

### IV. Proposed conditions of release

If the Court revokes the detention order, Mr. Hughes proposes release on conditions including the following:

1. A substantial secured appearance bond in an amount set by the Court, backed by responsible sureties and pledged collateral.

MICHAEL DEVEREUX, ESQ.

14

2. Home detention at a court approved residence, enforced by GPS or similar location monitoring.

3. Immediate surrender of all passports, passport cards, and travel documents, with a prohibition on applying for replacements.

4. No international travel and no travel outside the Central District of California except with prior approval.

5. Full disclosure of all financial accounts, including cryptocurrency wallets, exchanges, custodial accounts, and any other mechanism for digital transfer of value.

6. No transfer, liquidation, encumbrance, or direction of any asset except through counsel and only as authorized by the Court.

7. No contact with any witness, co-defendant, or other person identified by the Court or the Government, except through counsel as permitted.

8. Regular reporting to Pretrial Services and compliance with any additional supervisory terms the Court deems appropriate.

9. Continued medical care and monitoring, including compliance with prescribed treatment and prompt reporting of any hospitalization or significant change in condition.

## V. Conclusion

The present record does not support the extraordinary conclusion that no combination of conditions can reasonably assure Mr. Hughes's appearance and the safety of the community. The defense has offered a real bail package, documentary evidence that weakens a key part of the prior flight theory, a return chronology inconsistent with an intent to abscond, deep family and community ties in this

MICHAEL DEVEREUX, ESQ.

District, direct answers to the Government's cryptocurrency concerns, and practical medical conditions that address the most recent health issue.

For those reasons, Mr. Hughes respectfully asks this Court to revoke or amend the detention order under 18 U.S.C. § 3145(b), set appropriate conditions of release, and order him released pending trial.

Dated:  June 11, 2026                              Respectfully Submitted,


By: ____*Michael Devereux*____

Michael Devereux
Attorney for Defendant
Melvin Hughes

16